Wilbert, Administratrix, Respondent, vs. City of She-
boygan, imp., Appellant.

*March 24—April 19, 1904.*

*Municipal corporations: Streets: Death caused by defective insula-*
   *tion of lighting wires: Knowledge of defect: Duty of inspec-*
   *tion: Pleading.*

1. In an action against a city for death caused by defective in-
   sulation of electric lighting wires owned by a lighting com-
   pany, by reason whereof the current passed into a guy wire
   so located that a person following the usual course of travel
   on the street was liable to come in contact with it, as plaint-
   iff's intestate did, the complaint alleged that such condition
   was known to the city or had existed for so long a time be-
   fore the accident that the city ought, in the exercise of ordi-
   nary care, to have known of and remedied the defect. *Held,*
   that the indefiniteness in the statement as to the length of
   time the defective insulation had existed did not render the
   complaint insufficient, but could be taken advantage of, if at
   all, only by motion.
[2. Whether, if it should appear that the alleged defect was dis-
   coverable only by an inspection by an electrician, the city could
   be held liable on the ground that it was its duty to make such
   inspection of the appliances of a lighting company occupying
   its streets, not determined.]
3. Upon demurrer, all reasonable inferences that can be drawn
   from the language of a pleading to support it are to be in-
   dulged in, rather than such as will defeat it.

Appeal from an order of the circuit court for Sheboygan
county: Michael Kirwan, Circuit Judge. *Affirmed.*

Action to recover for the death of plaintiff's intestate, al-
leged to have been produced by the negligence of the defend-
ants. The fault charged as to the city of *Sheboygan* is this:
It permitted the Sheboygan Light, Power & Railway Com-
pany to use its streets for the maintenance of an electric light-
ing plant designed for public and private lighting. By the
ordinance in that regard the city possessed the right to de-
termine the manner in which poles, wires, and public lamps.

should be placed, and their location. The lighting company was thereby required to guard, so far as practicable, against the escape of the electric current from the conducting wires, and not to place poles, guy wires, or posts so as to in any manner interfere with the free and convenient use of the streets for ordinary purposes, and to provide and maintain insulative resistance for all electric light circuits, of the standard efficiency, and to the approval of the board of public works of the city. One of the lighting company's poles, at a point described, with its connections, including a suspended arc lamp, feed wire, a supporting and guy wire, were unskilfully placed, and allowed to be out of repair, so that the electric current escaped from its proper pathway to the guy wire, which was so located that a person following the usual course of travel was liable to come in contact therewith, causing the electric current to travel from the guy wire by way of his body to the ground. About January 8, 1902, the deceased, while so traveling in the exercise of ordinary care, came in contact with such guy wire, whereby the electric current passed through his body to the ground, causing his death. The defects in the electrical appliances, permitting the escape of the electric current to the guy wire, were absence of insulation between the suspended arc lamp and its supporting wire, and absence of insulation between the point of attachment of the supporting wire and the post to which the guy wire was attached, which wire passed to a spud post, thence to a shade tree. The location of the guy wire was not such as to render the use of the traveled way for ordinary purposes dangerous, except for the condition of the electrical appliances mentioned, permitting it to become a pathway for the electric current from its proper channel to the ground. The lighting company violated the ordinance under which it obtained the privilege to use the streets of the city, and the city neglected its duty in not compelling compliance with such ordinance in that the guy wire was placed and per-

mitted to remain so that a person rightly using the traveled way was liable to come in contact therewith. The lighting company failed to comply with such ordinance as to insulating devices to prevent the escape of the electric current to the guy wire, and the city failed to enforce such compliance or otherwise remedy the unsafe condition of the street caused thereby. Such condition was known to the defendants, or had existed for sufficient time to enable the city, by the exercise of ordinary care, to know thereof and remedy the same before the occurrence complained of.

The complaint contained other allegations to the foregoing effect, and others, constituting a cause of action against the city if those as to its neglect to maintain the street in a reasonably safe condition for public travel are sufficient to show breach of duty in that regard. It demurred to the complaint for insufficiency. The demurrer was overruled and the city appealed.

For the appellant there was a brief by *T. M. Bowler,* and oral argument by *E. R. Bowler.* They contended, *inter alia,* that the complaint wholly fails to allege any facts upon which the city, using ordinary care, would be advised of any defects in the insulator, or that the defects might have been detected by the city officers or discovered in the ordinary course of investigation, or that they were so open or notorious that the city, through its officers, should have been advised of them and repaired them. It therefore fails to state a cause of action against the city. *Cooper v. Milwaukee,* 97 Wis. 458; *Duncan v. Philadelphia,* 173 Pa. St. 550; Elliott, Roads & S. (2d ed.) § 824; Joyce, Electric Law, § 243; *West Chester v. Apple,* 35 Pa. St. 284; *Hanscom v. Boston,* 141 Mass. 242; *Lobdell v. New Bedford,* 1 Mass. 153; *Reed v. Northfield,* 13 Pick. 94; *Doherty v. Waltham,* 4 Gray, 596; *Winn v. Lowell,* 1 Allen, 177; *Hodgkins v. Rockport,* 116 Mass. 573; *Crosby v. Boston,* 118 Mass. 71; *Whitehead v. Lowell,* 124 Mass. 281.

*Simon Gillen,* for the respondent, argued, among other things, that while the defendant city is not an insurer of the safety of its streets, in so far as its duty to inspect the appliances used by electrical companies therein are concerned, it is bound, for that purpose, to exercise ordinary care and diligence. The electrical use of the streets being by its license, it is charged with the duty of exercising ordinary care to see that its licensees do not, by negligence, make the streets unsafe for persons making lawful use of them, in the exercise of ordinary care and prudence, such care being governed by the dangerous nature of the licensees' use or means of use. Elliott, Roads & S. (2d ed.) § 824; *Twist v. Rochester,* 37 App. Div. 307, 5 Am. Neg. Rep. 403; *Mooney v. Luzerne,* 186 Pa. St. 161, 40 L. R. A. 811; 1 Thompson, Comm. Negligence, § 813.

MARSHALL, J. The liability claimed is predicated on the duty of the city in respect to its streets, created by sec. 1339, Stats. 1898. It does not seem to be contended by respondent's counsel that actionable fault of appellant is alleged except in that it is stated the latter knew or ought to have known of the defective insulation alleged, and remedied the same before the occurrence complained of. On the other hand it is not claimed by appellant's counsel but that, if the city was so circumstanced prior to such occurrence, it was actionably negligent. In that view it seems very little need be said in deciding the appeal. The allegations of the complaint are very specific as to the city's knowledge of the dangerous condition which caused the death of respondent's intestate, or negligence in not having such knowledge and removing such condition before such occurrence. True, the charge is that it knew or ought to have known of such condition and applied the proper remedy because a sufficient length of time therefor had existed before the accident; but that charges the existence of the fact essential to the city's liability most dis-

tinctly. If counsel for appellant apprehended there was fatal indefiniteness, because the length of time the defective insulation had existed was not stated, the remedy was by motion to make more definite and certain, not by demurrer.

It is suggested by appellant's counsel that the defect was such that knowledge thereof was obtainable only by inspection, and that the city owed no duty to the public in that regard; that it was warranted in relying on the lighting company to comply with the terms of its privilege to use the streets as regards insulating its appliances, till knowledge was brought home to it of a failure in that regard by some circumstance not involving any duty on its part to inspect the electrical appliances for defects. Whether that be so does not affect the case as it now stands. The allegations of the complaint are broad enough to enable respondent to establish liability of the city on counsel's view of the requisites thereof. It may be that when she comes to produce the evidence it will appear that the alleged defect was discoverable only by an inspection of the appliances by an electrician. If so, the position taken by appellant's counsel will have to be passed upon. On the other hand, the evidence may show the alleged defective condition of the insulation to have been reported to the city through its proper officers long before the death of the intestate, or that circumstances existed sufficient to charge it with constructive notice of the danger long before such occurrence, independently of whether it owed to the public the duty to inspect the appliances of the lighting company for defects. If it comes to the point where respondent must rely, to establish a cause of action, upon whether such duty existed under the circumstances, a very serious question will be presented for decision. We prefer to meet that after it shall have been passed upon by the circuit court. We see nothing in the record to indicate that such court has yet done that. No such question has been heretofore suggested here, though, as indicated by the authorities cited in the brief of appel-

lant's counsel, it is not entirely new. *Denver v. Sherret,* 88 Fed. 226; Joyce, Electric Law, § 243.

Possibly appellant appealed for the sole purpose of obtaining a decision on the question above suggested, assuming it was necessarily involved in the decision of the demurrer, since it might be inferred from the complaint that respondent's cause of action is dependent upon a solution thereof in her favor. If so, the assumption is wrong. All reasonable inferences that can be drawn from the language of a pleading to support it are to be indulged in, rather than such as will defeat it. *Miller v. Bayer,* 94 Wis. 123, 68 N. W. 869; *Benolkin v. Guthrie,* 111 Wis. 554, 560, 87 N. W. 466; *Thomson v. Elton,* 109 Wis. 589, 597, 85 N. W. 425; *Pfister v. Sentinel Co.* 108 Wis. 572, 580, 84 N. W. 887; *Miles v. Mut. R. F. L. Asso.* 108 Wis. 421, 427, 84 N. W. 159.

The order appealed from must be affirmed.

*By the Court.*—So ordered.